# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

RONALD THOMAS BROWN, )
)
    Claimant Below-Appellant, )
)
v. )    C.A. No. N19A-08-006 VLM
)
RCD TIMBER PRODUCTS, INC., )
)
    Employer Below-Appellee, )
)

## ORDER

Date Assigned: February 13, 2020
Date Decided: August 3, 2020[1]

*Upon Consideration of Appellant's Appeal of the Decision of the Industrial Accident Board,* **AFFIRMED.**

Christian G. Heesters, Esquire of Schuster Jachetti, LLP, Wilmington, DE. Attorney for Appellant.

Nathan V. Gin, Esquire and Vance E. Davis, Jr., Esquire of Elfuzon Austin & Mondell, P.A., Wilmington, DE. Attorneys for Appellee.

**MEDINILLA, J.**

---

[1] The United States of America and the State of Delaware declared states of emergency due to COVID-19 that resulted in court closures to address public safety concerns. Per Administrative Directives of the Supreme Court of the State of Delaware and the Delaware Superior Court, and the national and local states of emergency, "[u]nder the authority of 10 Del. C. § 2004, the judicial emergency for all State courts and their facilities in Delaware [was] extended for another 30 days effective July 8, 2020 . . . ." Administrative Order No. 8 Extension of Judicial Emergency (Del. July 6, 2020).

## I.  INTRODUCTION

Appellant/Claimant, Ronald Thomas Brown ("Brown") timely appeals a decision of the Industrial Accident Board ("Board") that denied his Petition for additional worker's compensation benefits[2] where the Board found he failed to meet his burden in establishing that his cervical spine diagnosis was related to his work or that medical treatment to the spine was reasonable and necessary.  Upon consideration of the arguments and the record in this case, the Court finds as follows:

1.  On March 4, 2017, Brown sustained a left shoulder injury from a work-related accident while working for RCD Timber Products, Inc. ("Employer"). Employer accepted the claim for workers' compensation and Brown received treatment from various medical providers, including two shoulder surgeries performed by orthopedic surgeon, Joseph Mesa, M.D.

2.  After the first surgery in August 2017, Dr. Mesa evaluated Brown and found no evidence of any cervical spine pathology.  During the same timeframe, Brown received chiropractic treatment from Dr. McIllrath to the cervical spine.[3]  On October 23, 2017, Dr. Eric Schwartz, the medical expert on behalf of Employer,

---

[2] Brown sought (1) acknowledgement of a cervical spine injury and cervical fusion surgery recommended by Dr. Eskander; (2) payment of medical expenses for treatment provided by Delaware Orthopaedic Specialists; (3) payment of medical expenses for treatment provided by Dr. McIlrath (chiropractic); and (4) payment of medical expenses for treatment provided by Dr. Cary (pain management).
[3] The Board noted that from September 27, 2017 to October 6, 2017, Dr. McIlrath treated Brown's cervicothoracic region and directed treatment toward the cervical spine.

performed the first of two Defense Medical Evaluations (DME) and found no evidence of issues to the cervical spine.[4]

3. In January 2018, Brown underwent an MRI of the left shoulder, which showed a small partial thickness tear of the rotator cuff that necessitated the second surgery by Dr. Mesa in March 2018. Unfortunately, Brown's symptoms did not improve so Dr. Mesa referred him to pain medicine specialist, Dr. John Rowlands, who diagnosed Brown with cervical radiculopathy. An MRI in October 2018 confirmed disc herniation and severe stenosis. In December 2018, Brown had his initial visit with Dr. Mesa's colleague, Dr. Mark Eskander, an orthopedic spine surgeon, for complaints of neck pain radiating to the left scapula. After this initial visit, Dr. Eskander recommended a surgical fusion.

4. On December 18, 2018, Brown filed a Petition to Determine Additional Compensation Due. On January 31, 2019, Dr. Schwartz performed a second DME and opined that the cervical spine diagnosis was unrelated to the work injury.

5. At the IAB hearing on June 14, 2019, the Board heard from both experts, Drs. Eskander and Schwartz, for Brown and Employer, respectively. Dr. Eskander testified that Brown's cervical spine injury and treatment stemming

---

[4] Brown's Opening Brief, Exhibit C at 7:20-22; 8:9-14 ("And I did examine his neck at the time of my examination, he had no cervical neck pain . . . . he's not complaining of neck pain and there's no evidence of any cervical radiculopathy at the time of this first examination performed on October 23, 2017.").

therefrom[5] was reasonable, necessary, and related to his work injury of March 2017.[6] He offered that the absence of a cervical spine diagnosis was not indicative of a misdiagnosis, but rather an "incomplete" one.[7] Dr. Schwartz countered that Brown did not exhibit any cervical spine or cervical radiculopathy symptoms until over one year after the work accident and that because there was nothing acute on his MRI,[8] any cervical symptoms were due to degenerative disc disease unrelated to the work accident.[9] Dr. Schwartz further opined that the chiropractic treatment was not necessary for Brown's shoulder issues, that the pain management treatment was not reasonable,[10] and that any treatment related to the spine was not reasonable and necessary as work-related.[11]

6.     On July 31, 2019, the Board denied the Brown's petition. Accepting Dr. Schwartz' opinion, the Board first found that Brown failed to satisfy his burden of proof to that his cervical spine injury was work related.[12] Second, the Board found

---

[5] Including the treatment rendered by Dr. McIlrath, Dr. Crary, and Delaware Orthopaedic Specialists.
[6] Brown's Opening Brief, Exhibit A at 34-35 ("Claimant proffers Dr. Eskander's testimony for his opinion that the surgery is related because Claimant has experienced neck pathology since the work accident and the disc herniation at C5-C6 occurred in the work accident either acutely or Claimant's herniation was acutely aggravated in the work accident.") [hereinafter "Order"].
[7] Brown's Opening Brief, Exhibit B at 25:4-9 ("One is a shoulder issue and the other is a cervical issue . . . . [T]here are some findings on Dr. Mesa's operative report, but it doesn't tell the whole story . . . . I would describe it as an incomplete diagnosis.") [hereinafter "Eskander Tr."].
[8] Order at 35.
[9] Id.
[10] Id.
[11] Id.
[12] Id. at 44.

4

that Brown failed to satisfy his burden of proof to make a showing that the treatment sought was reasonable and necessary.[13] In sum, the Board found Dr. Schwartz more credible.[14]

7. On August 26, 2019, Brown filed a Notice of Appeal. On November 4, 2019, Brown filed his Opening Brief in Opposition of the Board's Decision. On November 22, 2019, Employer filed its Answering Brief. On December 5, 2019, Brown filed his Reply Brief. The matter is now ripe for review.[15]

## II. STANDARD OF REVIEW

8. On an appeal from a Board decision, the Superior Court does not "weigh the evidence, determine questions of credibility, and make its own factual findings and conclusions."[16] Those functions are exclusively held by the Board.[17] In considering an appeal from the Board, this Court's review is limited to correcting errors of law and a determination of whether substantial evidence[18] in the record

---

[13] Order at 46.

[14] *Id.* at 36-37.

[15] This case was assigned in late February 2020; review was limited due to COVID-19.

[16] *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66 (Del. 1965); *see Christiana Care Health Servs. v. Davis*, 127 A.3d 391, 394 (Del. 2015).

[17] *Noel-Liszkiewicz v. La-Z-Boy*, 68 A.3d 188, 191 (Del. 2013) (citing *Breeding v. Contractors–One–Inc.*, 549 A.2d 1102, 110 (Del. 1988)).

[18] *Olney v. Cooch*, 425 A.2d 610, 614 (Del. 1981) (Substantial evidence constitutes relevant evidence that a reasonable person "might accept as adequate to support a conclusion." ); *see Perdue Farms, Inc. v. Atkinson*, No. CV S19A-07-003 RFS, 2019 WL 7373397, at *2 (Del. Super. Ct. Dec. 30, 2019).

supports the Board's decision.[19] "Absent an abuse of discretion or an error of law, a Board decision that is supported by substantial evidence will not be overturned by the Court."[20] Issues raised on appeal involving exclusively a question of law are reviewed *de novo*.[21] In its review of the record, the Court will evaluate it "in the light most favorable to the prevailing party below."[22]

## III. DISCUSSION

9. When an employee files a petition to determine the compensability of an alleged work-related injury, the employee has the burden of proving causation not to a certainty, but only by a preponderance of evidence.[23] Expert testimony is often the primary mechanism used to fulfill this burden. Here, the Board reconciled the conflicting opinions of two medical experts. As with any witness, the Board has the authority and discretion to "determine[] the credibility of witnesses as well as the appropriate weight to accord witness testimony and the reasonable inferences to

---

[19] *Maracle v. Int'l Game Tech.*, No. CIV.A. 09A-11-002PLA, 2010 WL 541199, at *2 (Del. Super. Ct. Feb. 1, 2010) (citing *Histed v. E.I. Du Pont de Nemours & Co.*, 621 A.2d 340, 342 (Del. 1993); *Johnson*, 213 A.2d at 66). *See Lecompte v. Christiana Care Health Sys.*, 2002 WL 31186551, at *2 (Del. Super. Ct. Oct. 2, 2002) (citing 29 *Del. C.* § 10142(d)) (The Superior Court determines whether the record "is legally adequate to support the Board's findings.").

[20] *Miller v. Delaware Psychiatric Ctr.*, No. CIV.A. N12A-06007DCS, 2013 WL 1281850, at *7 (Del. Super. Ct. Mar. 28, 2013) (citing *Stanley v. Kraft Foods, Inc.*, 2008 WL 2410212, *2 (Del. Super. Ct. Mar. 24, 2008)).

[21] *See Vincent v. E. Shore Markets*, 970 A.2d 160, 163 (Del. 2009) (quoting *Baughan v. Wal–Mart Stores*, 947 A.2d 1120, 2008 WL 1930576, at *2 (Del. 2008) (TABLE); citing *Duvall v. Charles Connell Roofing*, 564 A.2d 1132 (Del. 1989)).

[22] *Miller*, 2013 WL 1281850, at *7 (citing *General Motors Corp. v. Guy*, 1991 WL 190491, *3 (Del. Super. Ct. Aug. 16, 1991)).

[23] *Goicuria v. Kauffman's Furniture*, 706 A.2d 26, 1998 WL 67720, at *1 (Del. 1998) (TABLE).

be drawn therefrom."[24] When "there is contradictory expert testimony supported by substantial evidence, it is within the [Board's] discretion to accept the testimony of one physician over another."[25] In exercising this discretion, the Board is "free to reject, in full or in part, the testimony of one physician over another based on its experience in gauging the testimony of witnesses who give conflicting testimony."[26] In doing so, the Board must provide clearly articulated factual findings.[27] The Court does not have the authority to encroach upon the Board's discretion in making these factual findings, and must accept such findings if sufficient facts exist in the record.[28]

---

[24] *Miller*, 2013 WL 1281850, at *8 (citing *Saunders v. DaimlerChrysler, Corp.*, 2006 WL 390098, *4 (Del. Feb. 17, 2006); *Christiana Care Health Sys., VNA v. Taggart*, 2004 WL 692640, *12 (Del. Super. Ct. Mar. 18, 2004) (citing *Clements v. Diamond State Port Co.*, 831 A.2d 870, 878 (Del. 2000))).

[25] *Butler v. Speakman Co.*, 615 A.2d 530 (Del. 1992); *see DiSabatino Bros. v. Wortman*, 453 A.2d 102, 106 (Del. 1982) (citing *General Motors v. Veasey*, 371 A.2d 1074, 1076 (Del. 1977)) (finding that although the evidence was in conflict, that the substantial evidence standard was satisfied where the Board "was free to accept the testimony" of one doctor, the employer's expert, over contrary opinion testimony); *see also Standard Distrib. Co. Through Pennsylvania Mfrs. Ass'n Ins. Co. v. Nally*, 630 A.2d 640, 646 (Del. 1993) ("[T]he Board was entitled to accept the testimony of one medical expert over the views of another."); *see also Sweeney v. Wal-Mart*, No. CV N12A-06-008 ALR, 2013 WL 3975149, at *4 (Del. Super. Ct. July 31, 2013) ("It is well-established that, in the case of conflicting expert testimony, the IAB is free to accept the opinion of one medical expert over another.").

[26] *Turbitt v. Blue Hen Lines*, 711 A.2d 1214, 1215 (Del. 1998).

[27] *See Sweeney*, 2013 WL 3975149, at *5 (citing *Lindsay v. Chrysler Corp.*, 1994 WL 750345, *1, *3 (Del. Super. Ct. Dec. 7, 1994)) (The Superior Court found that reversal of a Board decision is warranted where "the Board's findings . . . amounted to a single paragraph in which the Board simply stated that it found one expert more credible that another.").

[28] *See Miller*, 2013 WL 1281850, at *8 (citing *Opportunity Ctr., Inc. v. Jamison*, 2007 WL 3262211, *3 (Del. May 24, 2007) (citing *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66 (Del. 1965); *Christiana Care Health Sys., VNA v. Taggart*, 2004 WL 692640, *12 (Del. Super. Ct. Mar. 18, 2004)).

7

10.     Here, the Board issued a forty-seven page Order including a twelve-page analysis of the comparison of expert testimony and the conflicting opinions of whether Brown's cervical spine injury was work-related.[29] Woven throughout the Board's detailed comparison are consistent references to the record that led them to conclude that Brown failed to meet his burden of proof.[30]

11.     Preliminarily, the Court does not accept Brown's assertions that the Board misquoted Dr. Eskander. Dr. Eskander testified that Brown's cervical spine injuries either occurred in the work accident acutely *or* were aggravated by the work accident.[31] Testifying, "I don't know which of the two really, truly happened, but I think both of them are equally plausible legitimate scenarios for what happened,"[32] the Board's reference reiterates why the expert believed the injury was work related. To the extent it suggests some ambiguity regarding his opinion, there were other reasons why the Board determined him less credible.

---

[29] Order at 34-46.

[30] *Id.* at 44.

[31] *Id.* at 34-35 (emphasis added).

[32] Eskander Tr. 72:4-21 ("[T]here's nothing that jumps out of this MRI and says this absolutely is an acute disc herniation, but there's nothing that says this has to be degenerative either. I think we've described two plausible scenarios, and I'll reiterate them. Number one, there's an acute disc herniation at C5-6 that occurred during the work injury and that's the source of his radiating nerve pain down the arm. Scenario number two is he's always had a bit of a disc budge or protrusion there, but through all the mechanisms of the arm getting pulled, that was made symptomatic. *I don't know which of the two really, truly happened, but I think both of them are equally plausible legitimate scenarios for what happened . . . .*") (emphasis added).

8

12. First, it considered the frequency and timing of the experts' evaluations of Brown. It acknowledged that Dr. Eskander was Brown's treating physician who "should be given some deference due to his familiarity with Brown's condition . . . ."[33] Outweighing this factor was that both experts saw Brown an equal number of times.[34] Additionally, the Board highlighted that Dr. Eskander did not evaluate Brown until nearly two years after his work accident.[35] In comparing the timing and frequency of the experts' evaluations, the Board afforded less weight to one opinion and accepted that "Dr. Schwartz saw [Brown] closer in time to the actual work accident, . . . and therefore [was] able to examine [Brown's] cervical spine at an earlier date than Dr. Eskander . . . ."[36]

13. After providing an overview of the periods in which each expert evaluated Brown, the Board then provided a lengthy ten-page comparative analysis of the testimony of both experts and the entire record. It declined to accept Dr. Eskander's opinion that multiple medical providers, including his colleague, Dr. Mesa, failed to diagnose a spinal injury. Considering the entire record before it, the Board "[did] not find Dr. Eskander's theor[ies] plausible."[37] The evidence supports the Board's finding.

---

[33] Order at 36.
[34] *Id.*
[35] *Id.*
[36] *Id.* at 46.
[37] *Id.* at 36-37.

9

14. Accepting Dr. Schwartz' opinion on causation, the Board also considered his opinion regarding whether the medical treatment rendered to Brown for his cervical spine was reasonable and necessary. The issue of whether medical services are reasonable is wholly factual and under the "exclusive fact-finding purview of the Board."[38] Again, the Board properly found there was not sufficient evidence to show that Brown's pain management or chiropractic treatment was reasonable and necessary.[39] For the reasons previously stated, substantial evidence exists to support the Board's decision.

## IV.   CONCLUSION

The Board's decision to deny additional compensation is supported by substantial evidence and free from legal error. Brown failed to satisfy his burden of proof to make a showing by a preponderance of the evidence that his cervical injury was work related or that the treatment for said injury was reasonable and necessary. For the foregoing reasons, the Board's decision is **AFFIRMED.**

**IT IS SO ORDERED.**

Vivian L. Medinilla
Judge

oc:   Prothonotary

---

[38] *See McCracken v. Wilson Beverage*, No. C.A. 91A-10-004, 1992 WL 301985, at *2 (Del. Super. Ct. Oct. 15, 1992); *see also Moore v. Corp. Kids Learning Ctr.*, No. CV K15A-03-002 JJC, 2015 WL 5968861, at *3 (Del. Super. Ct. Oct. 6, 2015).

[39] Order at 46.

10