# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| **VAUGUEL PIERRE,** | ) | |
| | ) | |
| Employee-Appellant**,** | ) | |
| | ) | **C.A. No. K20A-11-001 NEP** |
| **v.** | ) | |
| | ) | |
| **PERDUE FARMS,** | ) | |
| | ) | |
| | ) | |
| Employer-Appellee**.** | ) | |

Submitted:  July 7, 2021
Decided:  August 12, 2021

## OPINION AND ORDER

*Upon Appellant's Appeal of the Decision on Petition to
Determine Compensation Due (Forfeiture Defense) from the
Industrial Accident Board of the State of Delaware*

**AFFIRMED**

James Robert Donovan, Esquire, Doroshow Pasquale Krawitz & Bhaya, Dover, Delaware, *Attorney for Employee-Appellant.*

Andrea C. Panico, Esquire, Tybout, Redfearn & Pell, Wilmington, Delaware, *Attorney for Employer-Appellee.*

Primos, J.

Appellant Vauguel Pierre ("Pierre") seeks reversal of a November 2, 2020, decision by the Industrial Accident Board of the State of Delaware (the "Board") that denied him compensation for a work injury that occurred during his employment with Appellee Perdue Farms ("Perdue"). Having extensively reviewed the record, while giving appropriate deference to the Board's experience and specialized competence, the Court finds that the Board's decision was supported by substantial evidence and was free from legal error and any abuse of discretion. Therefore, the Board's decision is **AFFIRMED** for the reasons explained below.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2010, Pierre started working for Perdue.[1] While employed, he attended monthly safety meetings, where he was advised of Perdue's rules, which included no running in the plant where Pierre worked.[2] In 2012, Pierre was disciplined for running in the plant.[3] On May 23, 2019, Pierre sustained injuries to his face from colliding with a metal pole or bar.[4]

As a result of Pierre's injuries, he filed with the Board a Petition to Determine Compensation Due pursuant to the Delaware Worker's Compensation Act (the "Act"), which permits employees to recover "compensation for personal injury or death by accident arising out of and in the course of employment."[5] Perdue disputed the compensability of the injury, asserting a forfeiture defense pursuant to 19 *Del. C.* § 2353(b), which bars a petitioner's right to compensation for an injury if the injury resulted, *inter alia*, from "the employee's deliberate and reckless indifference

---

[1] Rec. Tab 2 at p. 13, ll. 1-3.

[2] *Id.* at p. 14, ll. 4-13 (Pierre admitting that he attended safety meetings); *id.* at p. 16, ll. 18-24 (explaining what is covered at a safety meeting).

[3] *Id.* at p. 27, l. 18 through p. 28, l. 7.

[4] *Id.* at p. 29, ll. 7-25.

[5] 19 *Del. C.* § 2304.

to danger."[6]  The parties agreed to bifurcate the proceedings, holding one hearing regarding the compensability issue and another, if needed, to address medical issues.[7]

On October 20, 2020, the Board held a hearing regarding compensability.[8]  At the hearing, Pierre testified that he was asked by his line leader to check boxes that were coming down the line empty.[9]  Pierre asserted that he was walking fast, but not running, when he hit his face on a pole while completing the task.[10]  On the other hand, Ms. Elaine Akins ("Akins"), a team leader at Perdue, testified that she saw Pierre "sprint" past her and told him, "[H]ey, hold up. Stop."[11]  She testified that Pierre did not hear her and thereafter slipped, fell forward, hit his face on a steel bar, fell to the ground, and was knocked upright by the force of the impact, and that she then observed blood running down his face.[12]

When Pierre was asked by opposing counsel whether he knew what "stop," "slow down," and "don't run," mean, he answered that, although he preferred conversing in Spanish, he knew what the words meant.[13]  Akins stated that she had daily conversations with Pierre and that those conversations were in English.[14]  Akins testified that Pierre was reminded on more than one occasion that running

---

[6] *Id.* § 2353(b).

[7] Rec. Tab 5 at p. 2.

[8] *Id.*

[9] Rec. Tab 2 at p. 16, ll. 7-11.

[10] *Id.* at p. 17, ll. 12-23.

[11] *Id.* at p.31, ll. 11-13; p. 29, ll. 14-17.

[12] *Id.* at p. 29, ll. 16-24; p. 31, ll. 1-5; p. 35, ll. 13-20.

[13] *Id.* at p. 13, ll. 8-24.

[14] *Id.* at p. 32, ll. 3-9.

inside the plant was a safety violation,[15] and that after the incident, she asked Pierre why he had been running.[16]

In its November 2, 2020, Decision on Petition to Determine Compensation Due (Forfeiture Defense), the Board found that Pierre had forfeited his right to compensation because his action of running, when he had been told not to, represented deliberate and reckless indifference to danger.[17] The Board found Akins's testimony more credible than Pierre's, reasoning that her testimony that Pierre was running at the time of the injury was consistent with the extent and nature of his injuries.[18]

## PARTIES' CONTENTIONS

Pierre asserts three primary contentions for why this Court should reverse the Board's findings. First, Pierre argues that the Board committed legal error by denying him compensation on the ground that he had forfeited his right to compensation by acting with deliberate and reckless indifference to danger. Second, Pierre asserts that the Board abused its discretion by allowing Perdue to argue that Pierre was not credible because of his use of an interpreter. Finally, Pierre contends that the Board did not support its decision by substantial evidence, arguing that the Board could not conclude, based on the evidence, that Pierre's alleged running was the proximate cause of his injury.

Perdue contends that the Board did not err as a matter of law in finding that Pierre forfeited his right to compensation by acting with deliberate and reckless indifference to danger when he ran in the workplace. Moreover, Perdue contends

---

[15] *Id.* at p. 28, ll. 15-22.

[16] *Id.* at p. 33, l. 9.

[17] Rec. Tab 5 at pp. 5-6.

[18] *Id.* at p. 6.

that the Board did not abuse its discretion in allowing the employer's counsel to question Pierre about his understanding of the English language. Perdue also argues that the Board's decision was based on substantial evidence in the record.

## STANDARD OF REVIEW

On appeal of a Board decision, this Court is limited to reviewing whether the Board's decision is supported by substantial evidence and free from legal error.[19] "Substantial evidence is that 'which a reasonable mind might accept as adequate to support a conclusion.'"[20] Under the substantial evidence standard, the Court must "search the entire record to determine whether, on the basis of all of the testimony and exhibits before the [Board], it could fairly and reasonably reach the conclusion that it did."[21] The Board abuses its discretion "only when its decision has 'exceeded the bounds of reason in view of the circumstances.'"[22]

The Court reviews questions of law *de novo*.[23] Unless the Board erred as a matter of law, did not support its decision by substantial evidence, or abused its discretion, the Court will uphold the board's decision.[24]

---

[19] *Eckeard v. NPC Int'l, Inc.*, 2012 WL 5355628, at *2 (Del. Super. Oct. 17, 2012) (citing, *inter alia*, 29 *Del. C.* § 10142(d), which provides that, absent fraud, this Court reviews an agency's decision to determine whether it was supported by substantial evidence on the record before the agency).

[20] *Id.* (quoting *Olney v. Cooch*, 425 A.2d 610, 614 (Del. Super.1981) (citing *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966))).

[21] *Nat'l Cash Register v. Riner*, 424 A.2d 669, 674-75 (Del. Super. 1980) (citing *Winship v. Brewer School Comm.*, 390 A.2d 1089, 1092-93 (Me. 1978)).

[22] *Person-Gaines v. Pepco Holdings, Inc.*, 981 A.2d 1159, 1161 (Del. 2009) (quoting *Stanley v. Kraft Foods, Inc.*, 2008 WL 2410212, at *2 (Del. Super. Mar. 24, 2008)).

[23] *Eckeard*, 2012 WL 5355628, at *2 (citing *Anchor Motor Freight v. Ciabattoni*, 716 A.2d 154, 156 (Del. 1998)).

[24] *Id.* (citing *Carrion v. City of Wilmington*, 2006 WL 3502092, at *3 (Del. Super. Dec. 5, 2006)).

On appeal from the Board, this Court "does not sit as a trier of fact with authority to weigh the evidence, determine questions of credibility, and make its own factual findings and conclusions."[25]  Rather, its "sole function . . . is to determine whether or not there was substantial evidence to support the finding of the [Board]."[26]  This Court must give "considerable deference" to the Board's decision,[27] taking due account of the Board's "experience and specialized competence" and considering the purposes of the basic law under which the Board acts.[28]

## DISCUSSION

**I.  The Board did not err as a matter of law in finding that Pierre had forfeited his right to worker's compensation benefits due to his reckless and deliberate indifference to the danger of running in the workplace.**

The Act provides compensation for employees "for personal injury or death by accident arising out of and in the course of employment."[29]  In actions filed pursuant to the Act, the negligence of the employee is not a defense.[30]  However, if the injury resulted from, *inter alia*, the employee's "deliberate and reckless indifference to danger," the employee will forfeit the right to compensation.[31]  The employer bears the burden of proving the defense of forfeiture.[32]  Here, the Board

---

[25] *Christiana Care Health Services v. Davis*, 127 A.3d 391, 394 (Del. 2015) (internal quotation marks omitted) (quoting *Johnson v. Chrysler Corp.,* 213 A.2d 64, 66 (Del. 1965)).

[26] *Id.* (internal quotation marks omitted) (quoting *Johnson*, 213 A.2d at 64).

[27] *Id.*

[28] *Histed v. E.I. Du Pont de Nemours & Co.*, 621 A.2d 340, 342 (Del. 1993).

[29] 19 *Del.C.* § 2304.

[30] *Id.* § 2314.

[31] *Id.* § 2353(b).

[32] *Id.*

6

found that Pierre forfeited his workers' compensation benefits under the deliberate and reckless indifference exception.[33]

Pierre contends that the Board committed legal error by determining that Pierre had forfeited his right to compensation by acting with deliberate and reckless indifference to danger when he ran in the workplace after being repeatedly warned not to do so. In so arguing, Pierre relies heavily upon *Larson's Workers' Compensation,*[34] and in particular that treatise's observation that in a number of decisions from various jurisdictions where the forfeiture defense has been raised in the context of intentional violation of safety regulations, the defense has been rejected because "the injured employee's action, although prohibited, was instinctive or thoughtless, rather than intentional and deliberate . . . ."[35] Pierre also cites *Larson's* observation that "[a] condition that has been repeatedly stressed [in the decisions surveyed] is that the employee must understand the seriousness of the consequences attending violation of the safety rule, since otherwise the conduct can only be described as heedless rather than deliberate."[36]

Pierre's citations to *Larson's* are of limited usefulness because he has failed to provide citations to any of the cases from other jurisdictions to which *Larson's* cites. Moreover, the Court has not been presented with the facts of any of those cases (*i.e.*, to determine how they align with, or differ from, those of the instant case) or with the specific language of the statutory provisions that those decisions were construing. However, even were this Court, despite the absence of relevant citations or explanation, to accept these conclusions at face value—*i.e.*, that neither instinctive or thoughtless conduct, nor ignorance of the seriousness of a potential safety

---

[33] Rec. Tab 5 at p. 6.

[34] Lex K. Larson, *Larson's Workers' Compensation* (Matthew Bender Rev. Ed., 2011).

[35] *Id.* § 34.02 at 34-6.

[36] *Id.* § 34.03 at 34-9.

violation, supports a finding of forfeiture—no basis would exist for the proposition that the Board committed legal error in this case.

Here, the Board was presented with extensive testimony that Pierre's conduct was deliberate, not instinctive or thoughtless: (1) Pierre admitted that he knew that running in the plant was a safety violation;[37] (2) Akins testified that prior to the incident, Pierre had been repeatedly told, both in group settings and individually, that running was a safety violation;[38] (3) according to Akins, despite this knowledge and these warnings, Pierre was not just running, but "sprint[ing]", through the plant.[39] Moreover, there was no affirmative evidence before the Board that Pierre's conduct *was* instinctive or thoughtless: Pierre himself never testified that he was heedlessly or thoughtlessly running through the plant, but instead testified that he was *not* running,[40] while Akins, whom the Board found to be more credible, testified that Pierre *was* running.[41]

Similarly, with regard to Pierre's understanding of the seriousness of this safety violation, Akins testified that at group safety meetings—which Pierre conceded that he attended frequently[42]—she emphasized that "running is one thing that is a very high tolerance at Perdue because you can get hurt."[43] Moreover, when Pierre was disciplined for running through the plant in 2012, he was informed in

---

[37] Rec. Tab 2 at p. 14, ll. 21-23.

[38] *See id.* at p. 28, ll. 15-20 (Akins testified that Pierre had been informed on multiple occasions that running through the plant was a safety violation "through safety topics, and just verbal conversation, you know, we talk about safety"); p. 29, ll. 1-6 (all employees, including Pierre, had been informed "time and time again" that running was a safety hazard); p. 27, ll. 18-24 (Akins had previously written up Pierre for running through the plant).

[39] *Id.* at p. 31, ll. 11-13.

[40] *Id.* at p. 20, ll. 10-12.

[41] *Id.* at p. 29, ll. 11-17.

[42] *Id.* at p. 14, ll. 11-13.

[43] *Id.* at p. 28, ll. 21-22.

writing that "he was being issued this formal warning notice to bring to your attention the severity of this situation," that "THIS WARNING SHOULD NOT BE TAKEN LIGHTLY," and that "any further violations . . . will result in additional action being taken up to and including termination of employment."[44]

Pierre also attempts to argue from Delaware case law that the Board committed legal error. He concedes, however, that there are no Delaware decisions addressing directly the "deliberate and reckless indifference to danger" issue. Three of the Delaware decisions cited by Pierre—*Carey v. Bryan & Rollins*,[45] *American Communications Installations, Ltd. v. Emory,*[46] and *Delaware Tire Center v. Fox*[47]—address forfeiture from the perspective of wilfulness, a standard employed with respect to other provisions of the forfeiture statute but *not* with respect to the deliberate and reckless indifference to danger provision.[48] Moreover, all three of these decisions are further distinguishable from this case because in none of them was the employee warned, much less repeatedly warned, prior to the incident. Finally, even in *Anthony v. Carter*,[49] which did involve warnings to the employee prior to the incident, this Court did not determine that forfeiture was inappropriate, but instead remanded the case because the Board had been unclear about the basis of its decision, *i.e.*, whether it was based upon deliberate and reckless indifference to danger or upon some other provision.

---

[44] Rec. Tab 3 (emphasis in original).

[45] 117 A.2d 240 (Del. 1955).

[46] 1987 WL 14880 (Del. Super. July 9, 1987).

[47] 401 A.2d 97 (Del. Super. 1979).

[48] The statute provides for forfeiture, *inter alia*, "because of the employee's wilful intention to bring about the injury of death of the employee [at issue in *Fox*] or of another" or "because of the employee's wilful failure or refusal to use a reasonable safety appliance provided for the employee [at issue in *Emory*] or to perform a duty required by statute [at issue in *Carey*]." 19 *Del.C.* § 2353(b).

[49] 1988 WL 40176 (Del. Super. April 26, 1988).

Given the paucity of decisional authority in Delaware regarding the deliberate and reckless indifference to danger provision, the Court is left with the language of the statute itself. Pierre has advanced no argument that the statutory language is ambiguous. Therefore, considering the plain meaning of the statutory language, the Court cannot conclude that the Board committed legal error when it determined that Pierre, despite knowing that running was a serious safety violation, demonstrated "deliberate and reckless indifference to danger" by sprinting through the plant and exposing himself to injury.

## II.   The Board did not abuse its discretion.

As noted previously, the Board abuses its discretion if, and only if, "its decision has 'exceeded the bounds of reason in view of the circumstances.'"[50] Pierre argues that the Board abused its discretion by allowing Perdue to argue that Pierre was not credible because he elected to use a Spanish-language interpreter at the hearing.

To be sure, Perdue's counsel never directly argued that Pierre's use of an interpreter impugned his credibility. Some of counsel's statements, however, could be viewed as implying that contention, including the following:

> The Claimant, also, I would . . . submit . . . understands English. He speaks it. He has daily conversations with his line leader, Ms. Akins. And now he – he is kind of coming in saying, you know, I prefer Spanish, "no habla Anglaise [sic]," or something like that.[51]

Nonetheless, Pierre's ability to understand English was a legitimate subject of inquiry at the hearing. Even though Akins testified that Pierre did not hear him when she warned him to "hold up" and "[s]top" on the date in question,[52] Pierre's understanding of these and other English words and phrases was crucial to the

---

[50] *Person-Gaines*, 981 A.2d at 1161 (quoting *Stanley*, 2008 WL 5355628, at *2).
[51] Rec. Tab 2 at p. 41, ll. 13-18.

[52] *Id.* at p. 29, ll. 14-16.

Board's determination of whether Pierre had understood the multiple warnings previously given to him about running in the plant.

More importantly, there is no indication in the record before this Court, including the Board's decision itself,[53] that the Board found Pierre to be less credible because he chose to use a Spanish-language interpreter at the hearing. Indeed, the Board ultimately credited Pierre's own testimony that he understood English phrases regarding movement in the plant.[54]

It was undeniably inappropriate for Perdue's counsel at the hearing (who was not the same attorney as that involved in the current briefing) to use the phrase "no habla inglés" in reference to Pierre—although Perdue's hearing counsel later stated that he "mean[t] no disrespect" to Pierre or his attorney by his comments.[55] However, this Court cannot conclude that the Board abused its discretion in declining to take any action in response either to Perdue's counsel's questioning of Pierre regarding his understanding of English or in response to that counsel's arguments about the issue, particularly since Pierre's counsel did not object when Perdue's counsel was questioning Pierre regarding the language issue,[56] nor did Pierre's counsel request any action on the part of the Board in response to the arguments of Perdue's counsel regarding the issue.[57] Neither can this Court conclude that the Board abused its discretion in relying in part upon the evidence regarding Pierre's understanding of English, which was relevant to its ultimate decision.

---

[53] Rec. Tab 5.

[54] *Id.* at p. 5.

[55] Rec. Tab 2, p. 50, ll. 6-8.

[56] *Id.* at p. 12, l. 21 through p. 14, l. 3.

[57] *Id.* at p. 44, l. 17 through p. 45, l. 3.

**III.   The Board's decision is supported by substantial evidence.**

After an extensive review of the record below, the Court finds that the Board supported its decision with substantial evidence. The Board listed five factors it relied upon in finding that Pierre acted with deliberate and reckless indifference to danger, which are supported by the record.

First, the Board found that Pierre "admitted that he knows that running in the plant is a safety violation" and that "Ms. Akins confirmed that she has informed [Pierre] before that running is a safety violation."[58] The record is consistent with this finding.[59]

Second, the Board found that Pierre "has worked for [Perdue] for years and admitted that he has participated in safety meetings, during which Akins reported safety violations/precautions are reiterated."[60] Pierre, when asked at the Board hearing whether he had attended "many, many" safety meetings at Perdue, answered in the affirmative,[61] and he testified that he has worked at Perdue since 2010.[62] Akins testified that safety meetings covered topics regarding "slips, trips, and falls, where running, being cautious of hoses, dirty floors, . . . and things of that matter" were addressed,[63] and she further testified that at the safety meetings, employees were instructed that running was a serious safety violation that could result in injury.[64]

---

[58] Rec. Tab 5 at p. 5.

[59] *See, e.g.,* Rec. Tab 2 at p. 14, ll. 21-23 (where Pierre replied in the affirmative when asked whether he knew that it is a safety violation to run through the plant); p. 28, ll. 15-22 (testimony by Akins that Pierre was informed more than once that running through the plant was a serious safety violation).

[60] Rec. Tab 5 at p. 5.

[61] Rec. Tab 2 at p. 14, ll. 11-13.

[62] *Id.* at p. 13, ll. 1-3.

[63] *Id.* at p. 26, ll. 18-24.

[64] *Id.* at p. 28, ll. 20-22.

Third, Pierre "admitted that he understands the phrases 'stop,' 'slow down,' and 'don't run'" and engages in conversations in English with his supervisor, Akins, every day.[65] As noted previously, Pierre did not hear Akins use these phrases on the date of the incident,[66] but his knowledge of these and similar phrases was important to the Board's determination that Pierre had understood the repeated warnings about running prior to the incident.

Fourth, Pierre "admitted that he had been disciplined for a similar offense, involving running, in 2012."[67] Pierre argues that the 2012 incident did not primarily involve running. However, this is belied by Akins's testimony (she was the individual who disciplined him in 2012), by the written disciplinary form, and by Pierre's own admission at the hearing. According to Akins, during the 2012 incident Pierre was "running through the plant" and "was pushing an associate out of the way, to get by."[68] The disciplinary form states that Pierre was "observed . . . running through the plant."[69] Finally, Pierre admitted that he had been disciplined in 2012 "for running through the plant."[70]

Fifth, although Pierre denied that he was running at the time of the incident and denied that he passed Akins before he fell,[71] Akins "testified credibly that she witnessed the incident and described [Pierre's] speed as a 'sprint'" and "that [Pierre] "sustained a 'hard hit' because of his speed at the time of his fall and striking the

---

[65] *Id.* at p. 13, ll. 13-22.

[66] *Id.* at p. 29, ll. 11-17.

[67] Rec. Tab 5 at p. 5.

[68] Rec. Tab 2 at p. 27, l. 23 through p. 28, l. 1.

[69] Rec. Tab 3.

[70] Rec. Tab 2 at p. 14, ll. 14-17.

[71] *Id.* at p. 20, ll. 10-19.

pole," which was confirmed by the nature and extent of Pierre's injuries.[72] Pierre argues that under his version of events, he struck his face on the pole and subsequently fell to the ground, the floor where he fell was dry, and his speed had nothing to do with the nature or extent of his injuries. Again, however, the Board found Akins to be more credible than Pierre,[73] and Akins testified that the floor was "wet,"[74] that Pierre slipped and *then* hit the pole, and that his speed affected the force with which he hit the pole, thereby exacerbating his injuries.

Pierre argues that Perdue failed to show that Pierre's running was the proximate cause of his injury,[75] since Akins was the only eyewitness to the incident and since Perdue failed to investigate whether there was a video recording of the incident. However, the Court finds that there is substantial evidence in the record that Pierre's running proximately caused his injury. At the hearing, Akins gave a detailed account of the mechanism of Pierre's injury: (1) Akins testified that Pierre was running, he slipped and his foot went out from under him, he was propelled forward, his face hit a metal bar, and he fell to the ground and was then knocked upright by the force of the impact;[76] (2) Akins could tell that Pierre "had some speed to him" at the time of the impact because it was a "hard hit" that "busted his eye wide open";[77] (3) Akins was certain that Pierre slipped and then hit his face, as opposed to hitting his face and then falling, because his foot went out from under

---

[72] Rec. Tab 5 at p. 6.

[73] *See Christiana Care*, 127 A.3d at 394 (the Board, not this Court, determines questions of credibility).

[74] Rec. Tab 2 at p. 27, ll. 2-3.

[75] The forfeiture provision requires the employer to show that the employee was "injured *as a result of* . . . deliberate and reckless indifference to danger." 19 *Del.C.* § 2353(b) (emphasis supplied).

[76] Rec. Tab 2 at p. 29, ll. 19-23; p. 31, ll. 2-5.

[77] *Id*. at p. 31, ll. 14-20.

14

him and he went forward, hitting the pole.[78] Thus, the Court finds that the Board, based upon Akins's detailed testimony, could make the common sense assessment that running at high speed ("sprinting"), slipping, and striking a metal pole or bar exacerbated Pierre's injuries due to the simple principles of physics involved—*i.e.*, Pierre's injuries were more serious than they would have been had he simply struck the pole while walking.[79]

In short, the Court finds that substantial evidence supports the Board's decision that Pierre's injuries resulted from his deliberate and reckless indifference to danger.

## CONCLUSION

The Board did not commit legal error, did not abuse its discretion, and supported its decision with substantial evidence.

**WHEREFORE**, the Board's Decision on Petition to Determine Compensation Due is **AFFIRMED**.

**IT IS SO ORDERED.**

/s/Noel Eason Primos
Judge

NEP/wjs
*Via File & ServeXpress*
Oc:   Prothonotary
       Counsel of Record

---

[78] *Id.* at p. 35, ll. 13-20.

[79] *See*, *e.g.*, *Genesis Healthcare Services v. Cephas*, 2021 WL 3184319, at *2 n. 21 (Del. Super. July 28, 2021) (comparing role of the Board, as the finder of fact, in assessing evidence to that of the jury in a jury trial); *Garneski v. Teromina*, 2003 WL 504863, at *1 (Del. Super. Feb. 25, 2003) (holding that despite *Davis v. Maute*, 770 A.2d 36 (Del. 2001), which prohibited argument correlating vehicle damage to force at impact without expert testimony, a jury was free to draw "the common sense conclusion that minor impact tends to indicate minor injury and that major impact tends to indicate major injury").