IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CHRISTIANA CARE HEALTH SERVICES, | § § § | No. 138, 2015 |
| Appellee Below-Appellant, | § § | |
| v. | § § § | Court Below: Superior Court of the State of Delaware, in and for New Castle County |
| KENNETH S. DAVIS, | § § | |
| | § § | C.A. No. N14-A-05-012 VLM |
| Appellant Below-Appellee. | § § | |
| | § | |

Submitted: October 21, 2015
Decided: November 3, 2015


Before **STRINE**, Chief Justice; **HOLLAND** and **VALIHURA**, Justices.

Upon appeal from the Superior Court. **REVERSED**.

Maria Paris Newill, Esquire, Gregory P. Skolnik, Esquire, Heckler & Frabizzio, Wilmington, Delaware, for Appellant.

Michael B. Galbraith, Esquire, Weik, Nitsche, Dougherty, & Galbraith, Wilmington, Delaware, for Appellee.


**STRINE**, Chief Justice:

# I. INTRODUCTION

This appeal addresses the Superior Court's decision to overrule a determination by the Industrial Accident Board (the "IAB") that the parties before it had reached a settlement agreement, which barred a later claim for benefits due to permanent impairment. Because it lacked a complete release that would have avoided any question about its effect, the settlement agreement was less than ideally clear. But the IAB's factual determination that the parties' settlement, which involved an express agreement that the injury in question was resolved as an ongoing medical matter, precluded a future claim for permanent impairment based on the same "resolved" injury was supported by substantial evidence. Because the Superior Court was required to defer to the IAB's factual determinations to the extent they were supported by substantial evidence, the Superior Court erred by substituting its own factual findings for that of the IAB. Moreover, there is no question that the settlement agreement was, as a legal matter, a binding contract supported by adequate consideration. Therefore, we reverse the Superior Court's decision and reinstate the IAB's determination.

# II. BACKGROUND[1]

Kenneth Davis was employed by Christiana Care Health Services as a dishwasher in its Nutrition Services department. On August 21, 2012, Davis was working when he slipped and fell backwards, landing on his back. Davis filed a Petition to Determine

---

[1] Unless otherwise noted, all facts are taken from the IAB's order dated May 15, 2014. *Davis v. Christiana Care Health Servs.*, Hearing No. 1387075 (Industrial Accident Board, May 15, 2014) [hereinafter IAB Order].

1

Compensation Due with the IAB on December 11, 2012, alleging total disability since the date of his fall.

Dr. Crain[2] saw Davis for a defense medical examination on February 27, 2013.[3] Dr. Crain, wrote a report indicating "that any low back injury causally related to the work accident was '*resolved*' and any ongoing symptoms were non-work related."[4]

On March 18, 2013, Christiana Care's counsel sent a settlement offer to Davis's attorney.[5] The letter provided that Christiana Care would "acknowledge the 8/21/12 work accident and a lumbar spine contusion – resolved" and specified certain discrete medical bills that it would cover.[6] In other words, Christiana Care's extremely modest settlement offer was an attempt to agree that any work-related injury Davis suffered was "resolved" and to prevent Davis from seeking benefits for an ongoing injury and treatment. Although it extended this settlement offer, Christiana Care's position was that Davis's back injury was due to a pre-existing gunshot injury that was unrelated to Davis's employment. To the extent that any injury during his work contributed to Davis's back troubles, Christiana Care maintained that this was resolved as of February 27, 2013 when Dr. Crain examined him.

---

[2] There is no indication in the record of Dr. Crain's first name.
[3] The record does not include a copy of Dr. Crain's report.
[4] IAB Order at 2 (emphasis in original).
[5] App. to Opening Br. at 21–22 (Letter from Maria Paris Newill, Esquire to Gary S. Nitsche, Esquire, Mar. 18, 2013).
[6] *Id.* at 21.

2

On May 13, 2013, Davis's attorney accepted Christiana Care's settlement offer in an email, noting that he had "authority to accept the employer's settlement offer."[7] Davis's counsel explained that "[m]y understanding is that this will resolve *all* issues presently pending before the board" and asked Christiana Care's attorney to "forward the appropriate agreements & receipts to my office along with confirmations that the aforementioned bills have been paid."[8]  As noted, Davis had put before the IAB the argument that he was rendered totally disabled by his fall and that Christiana Care had to pay him a further stream of benefits as compensation for that loss.[9]

Christiana Care's attorney replied to Davis by letter on May 16, 2013, confirming the settlement and that Christiana Care agreed to "acknowledge the 8/21/12 work accident and a lumbar spine contusion – *resolved*."[10]  This letter further provided that it "constitute[d] the complete settlement."[11]  The parties jointly submitted the Department of Labor's "Agreement as to Compensation" form on May 21, 2013, which was approved on July 6, 2013.[12]

On May 23, 2013, Christiana Care's attorney sent Davis's attorney the "'Medical Only' Agreements and Final Receipts" and requested that Davis's attorney have Davis

---

[7] *Id.* at 23 (Email from Michael B. Galbraith, Esquire to Maria Paris Newill, Esquire, May 13, 2013).
[8] *Id.* (emphasis added).
[9] Industrial Accident Board Pre-Trial Memorandum, No. 1387075, at 2 (Feb. 19, 2013) (clarifying that Davis sought "total disability benefits").
[10] *Id.* at 25 (Letter from Maria Paris Newill, Esquire to Gary S. Nitsche, Esquire, May 16, 2013) (emphasis added).
[11] *Id.* at 26.
[12] *Id.* at 32 (Office of Workers' Compensation Agreement as to Compensation, May 21, 2013).

sign these settlement documents so that they could be filed with the IAB.[13] The documents were returned to Christiana Care's attorney on June 20, 2013 and soon thereafter filed with the IAB.

Eight months later, on February 17, 2014, Davis filed another petition with the IAB, alleging that he was 8% permanently impaired as a result of his August 2012 fall.[14] Christiana Care responded by filing a motion to dismiss the petition because it was inconsistent with the parties' settlement agreement. Christiana Care's counsel also sent the IAB a request for a hearing on this issue on April 16, 2014.

After briefing by the parties, the IAB granted Christiana Care's motion and dismissed Davis's petition with prejudice. It concluded that "the objective evidence presented clearly indicates that the Employer has met its burden of proof to establish that the parties agreed that the injury that was acknowledged was 'lumbar spine contusion – *resolved*', and that only a limited period of treatment would be paid."[15] The IAB noted that the attorneys' exchange of correspondence created a valid settlement agreement and that "[n]o objection was raised to the language of the settlement agreement until close to one year post-settlement when the instant Petition alleging permanent impairment was filed."[16]

Davis appealed the IAB's determination to the Superior Court. The Superior Court overturned the IAB's decision, concluding that it was "unsupported by the

---

[13] *Id.* at 28 (Letter from Maria Paris Newill, Esquire to Gary S. Nitsche, Esquire, May 23, 2013).
[14] App. to Answering Br. at 27 (Petition to Determine Additional Compensation Due to Injured Employee, Feb. 12, 2014). This petition was filed pursuant to 19 *Del. C.* § 2326.
[15] IAB Order at 4.
[16] *Id.*

4

evidence."[17]  The Superior Court reasoned that Christiana Care agreed in the settlement to pay medical expenses through the date of Dr. Crain's examination but that the purpose of the settlement agreement "was not to resolve claims related to permanent impairment."[18] Rather, the Superior Court concluded that "the 'resolve' language in the settlement discussions did not free [Christiana Care] of responsibility for the injury indefinitely" but only indicated the parties' agreement that Davis "suffered a compensable, work-related injury" and that "his medical bills were reasonable and causally related to the work accident."[19]  This appeal followed.

### III.    ANALYSIS

On an appeal from the IAB, "the Superior Court does not sit as a trier of fact with authority to weigh the evidence, determine questions of credibility, and make its own factual findings and conclusions."[20]  Thus, "the sole function of the Superior Court, as is the function of this Court on appeal, is to determine whether or not there was substantial evidence to support the finding of the [IAB]."[21]  "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[22]  It is "more than a scintilla but less than a preponderance of the

---

[17] *Davis v. Christiana Care Health Servs.*, 2015 WL 899599, at *3 (Del. Super. Feb. 27, 2015).
[18] *Id.*
[19] *Id.* at *5; *see also id.* at *3 ("[M]erely because an injury is described as resolved does not mean that a claimant's case is fully 'resolved' to the extent it precludes him from raising additional claims that he might be entitled to receive for his work-related injury.").
[20] *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66 (Del. 1965).
[21] *Id.* at 64.
[22] *Histed v. E.I. DuPont de Nemours & Co.*, 621 A.2d 340, 342 (Del. 1993) (internal quotation marks omitted).

5

evidence."[23] Thus, we give considerable deference to the IAB's decision and uphold the Superior Court's reversal of it "[o]nly when there is *no* satisfactory proof in support of a factual finding of the Board."[24] Although our review of the IAB's legal determinations is *de novo*,[25] we give heavy weight to the IAB's application of legal principles in the specialized context of our state's workers' compensation scheme, because the IAB has the occasion to give life to that scheme on a weekly basis in the many cases that come before it.[26]

We find that the IAB's decision was supported by substantial evidence and thus that the Superior Court was required to defer to it. The ability of parties to settle a workers' compensation claim is undisputed, and Delaware law favors such agreements.[27] The Superior Court, however, found that the exchange of correspondence between the parties' attorneys did not amount to a settlement agreement as to all future claims arising

---

[23] *Breeding v. Contractors-One-Inc.*, 549 A.2d 1102, 1104 (Del. 1988).

[24] *Johnson*, 213 A.2d at 67 (emphasis added).

[25] *Person-Gaines v. Pepco Holdings, Inc.*, 981 A.2d 1159, 1161 (Del. 2009); *Anchor Motor Freight v. Ciabattoni*, 716 A.2d 154, 156 (Del. 1998); *Chavez v. David's Bridal*, 979 A.2d 1129, 1133 (Del. Super. 2008).

[26] *See Histed*, 621 A.2d at 342 ("When factual determinations are at issue, we must take due account of the experience and specialized competence of the Board and of the purposes of our workers' compensation law."); *Spring Constr. Co. v. Mendez*, 1992 WL 302072, at *2 (Del. Super. Sept. 15, 1992) ("Since one of the most compelling reasons for creating administrative agencies is to allow the judicial system to make use of the knowledge and experience of specialists, this Court would be wasting this resource if it lightly dismissed the fruits of such expertise. It may not do so when the decision is based on substantial evidence and the product of an orderly deductive process.").

[27] *See Crescent/Mach I Partners, L.P. v. Dr Pepper Bottling Co. of Tex.*, 962 A.2d 205, 208 (Del. 2008) ("Delaware law favors settlements and treats them as binding contracts."); *Chavez*, 979 A.2d at 1134 ("[I]n a settlement agreement, a party may effectively waive his or her right to petition the [IAB] for additional compensation by agreeing to free an employer for responsibility of the injury.").

6

out of Davis's fall.[28]  Admittedly, the parties here could have been more clear about creating such an agreement, simply by using a general release and adding an exception for the one category of claims that could still be made, which was for any unpaid bills for treatment during the period before Dr. Crain's evaluation.  But, in contrast to the Superior Court, we cannot conclude that the IAB was without substantial evidence to rule as it did when the course of the uncontradicted negotiating process, and particularly the final settlement agreement, so clearly manifested that the parties were agreeing that the injury was "resolved."[29]  That agreement is inconsistent with Davis's later contention that the injury was not in fact resolved and that he suffered a permanent impairment for which Christiana Care would be responsible in further payments.[30]

---

[28] *See Davis*, 2015 WL 899599, at *3 ("This Court finds that the Board's interpretation of the parties' agreement was evidenced by its May 15, 2014 Order is unsupported by the evidence presented at the Legal Hearing.").

[29] App. to Opening Br. at 32 (Office of Workers' Compensation Agreement as to Compensation, May 21, 2013).

[30] Under Davis's understanding of this agreement, he got payments for medical expenses from Christiana Care and an acknowledgement by Christiana Care that Davis had suffered an injury in the fall that caused him harm.  In exchange, though, Davis contends that Christiana Care got nothing, other than a de facto continuance of the case to a later date at which Davis could revive his claim that the fall caused him serious injury, against a backdrop where Christiana Care would have acknowledged that the fall caused him injury.   The "resolved" nature of the injury and the dispute would therefore have been no resolution at all.  The IAB was well within its discretion to conclude that Davis's written acceptance broadly indicating that the settlement would resolve all claims pending before the Board, and the signed agreement clearly noting that Davis's contusion was "resolved," meant that Davis could not bring future claims contending that any injury from the fall was causing him further compensable costs of any kind.

At oral argument, counsel for Davis could not remember exactly what claims Davis was making as of the time of settlement.  The record reveals that they were broad and included both "total disability benefits" and "partial disability benefits."  Industrial Accident Board Pre-Trial Memorandum, No. 1387075, at 2 (Feb. 19, 2013).  This context supports the IAB's conclusion that Christiana Care was willing to provide Davis with limited relief it did not believe he deserved (payment of medical costs that Christiana Care actually contended were attributable to both pre-existing and subsequent non-work injuries to Davis's lower back) in order "to avoid the

7

Furthermore, Davis's argument that an acceptance email that did not match Christiana Care's settlement offer word-for-word was a counteroffer is without merit.[31] The IAB was within its discretion to reject that argument because the final settlement agreement signed by Davis contained the precise term he claims to have desired to exclude. Specifically, the compensation agreement provided, "Nature/Part of Body: lumbar spine contusion, resolved."[32] Thus, the parties created a valid and enforceable settlement agreement, which provided that Davis's back injuries were "resolved" as of February 27, 2013. That agreement was neither an admission of liability on Christiana Care's part nor a commutation of benefits.[33] Rather, the settlement agreement that Davis's counsel negotiated and he signed was an acknowledgement that any back injury Davis suffered as a result of his fall was resolved and that his claims against Christiana Care were limited to those for outstanding medical treatment incurred before February 27, 2013.

Therefore, the judgment of the Superior Court of February 27, 2015 is reversed, and the Industrial Accident Board's order of May 15, 2014 is reinstated.

---

need for a Hearing on the Petition and incurring the associated litigation costs/expenses." IAB Order at 4.

[31] Davis argues "that the parties did not have a meeting of the minds on all material terms of the settlement agreement because the acceptance was not on identical terms to the offer" and thus that Davis's "settlement email constituted a counteroffer." Answering Br. at 16.

[32] App. to Opening Br. at 32 (Office of Workers' Compensation Agreement as to Compensation, May 21, 2013).

[33] The Superior Court noted that Delaware's workers' compensation statute permits an employer and employee to settle their case through commutation. *See* 19 *Del. C.* § 2358. This statute permits, with IAB approval, the employer to pay the employee "one large lump sum payment instead of many small monthly payments that may extend for years." *Ciabattoni*, 716 A.2d at 157. We agree with Christiana Care that the settlement did not involve a commutation of benefits because Christiana Care never agreed that the benefits were due and was not seeking to commute in the sense that the statute means.

8