# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

ZELDA SHEPPARD,                        )
                                                     )

    Claimant-Below,                   )
    Appellant,                            )
v.                                                  )     C.A. No.     S20A-07-001 RHR
                                                     )

ALLEN FAMILY FOODS,                )
                                                     )

    Employer-Below,                  )
    Appellee.                             )

Decided: September 29, 2021

## <u>MEMORANDUM OPINION</u>

*Upon Consideration of Appellant's Appeal from the Decision of the Industrial Accident Board* **– AFFIRMED**

Walt F. Schmittinger, Esquire, Candace E. Holmes, Esquire, Schmittinger and Rodriguez, Dover, Delaware, *Attorneys for Claimant Below-Appellant*.

John W. Morgan, Esquire, Heckler & Frabizzio, Wilmington, Delaware, *Attorney for Employer-Below, Appellee*.

ROBINSON, J.

## I. INTRODUCTION

Zelda Sheppard ("Claimant") appeals the decision of the Industrial Accident Board ("IAB") granting Allen Family Foods' ("Employer") Petition for Review ("Petition") and finding that Claimant's prescribed narcotic pain medications were no longer compensable. Claimant sought to dismiss the Petition at the conclusion of Employer's case below, arguing that the matter should have been considered under the utilization review process. The IAB denied that request and granted Employer's request to no longer compensate Claimant for her medical expenses after a two-month weaning period. This appeal followed.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Claimant sustained a compensable work injury on April 4, 2011 related to a fall in Employer's cafeteria, after which she reported pain in her neck, left shoulder, lower back, both hips, and left leg. She has been treated for pain since the incident. On December 2, 2019, Employer filed the Petition under 19 *Del. C.* § 2347 ("Section 2347") seeking to terminate the compensability of Claimant's narcotic medications and injection treatment. The parties stipulated to proceeding before the IAB hearing officer, and the hearing commenced on June 8, 2020.

Employer presented one witness, Jason Brokaw, M.D., by deposition. The parties stipulated that he was qualified to testify as an expert in this matter. He

examined Claimant three times: on January 5, 2017, September 4, 2019, and February 27, 2020. At the September 4, 2019 visit, Claimant denied illegal drug use, but Dr. Brokaw noted that most of her urine screens since 2011 had been positive for marijuana. Following a physical examination at that visit and a review of Claimant's records, Dr. Brokaw noted several inconsistencies in Claimant's statements and treatments. These inconsistencies included the improper location of a patch that administers opioid medication throughout the body, evidence of ongoing marijuana use, high prescribed doses of various opioid medications, and a disproportionate description of pain relative to the nature of the accident.

At the third visit with Dr. Brokaw, Claimant admitted to ongoing illegal marijuana use but said she was in the process of obtaining a medical marijuana prescription. According to Dr. Brokaw, Claimant had told her treatment providers that she already had a prescription card for medical marijuana, but the provider—at that time, a nurse practitioner, because the previous treating physicians had left the practice—never confirmed that assertion. Dr. Brokaw's physical examination was consistent with his prior ones, with the exception that at this visit, Claimant smelled of marijuana. The doctor noted his concerns that treatment for Claimant's condition with opioid medication was not consistent with the Centers for Disease Control's guidelines. Dr. Brokaw opined that Claimant was not a good candidate for abusable medications and that she should be weaned off her prescribed medications.

3

Dr. Brokaw further testified that he did not correlate the need for ongoing medical treatment to the work-related injury of April 2011. He opined that none of Claimant's present symptoms were causally related to 2011 injury. He stated that all of the conditions causally related to the injury would have reverted to pre-injury status within a one-year time period, and that any justifiable treatment was attributable to other causes.

On cross-examination, Dr. Brokaw acknowledged that he believes treatment with marijuana is appropriate only in rare situations. He testified that although Claimant would need ongoing treatment with non-abusable medications and possibly with physical therapy, that treatment need was unrelated to the April 2011 injury.

At the conclusion of Employer's case, Claimant moved to dismiss or, in the alternative, for a directed verdict. As will be discussed in more detail below, the motion was taken under advisement.

Claimant presented one witness by deposition, Patricia Grady, CRNP, the nurse practitioner who was treating Claimant ("NP Grady"). NP Grady reviewed Claimant's history of treatment with her practice and described the monitoring she does to ensure patients are compliant with their treatment plans. NP Grady testified that Claimant was stable and was benefiting from her treatment with narcotic pain medication, and that she was a cooperative patient. She disagreed with Dr. Brokaw's

4

opinion that Claimant was not compliant and should be discontinued from opiate medication. NP Grady opined that the narcotic pain medication is reasonable, necessary, and causally related to Claimant's April 2011 injury.

On cross-examination, NP Grady stated that her records indicated that Claimant had a medical marijuana card, although Claimant admitted to Dr. Brokaw that she did not have one at that time. NP Grady also acknowledged that during Claimant's treatment at her facility, there was no evidence of a decrease in the prescribed narcotic pain medication. To the contrary, NP Grady acknowledged that Claimant's pain medication use actually increased in March 2018.

Claimant testified last. She said that she had been in continuous treatment since her injury in 2011 and has suffered ongoing effects of the injury, including neck, back, leg, shoulder, and arm pain. Claimant testified that there had been occasions when she had to go without her medication and, when she did so, she was unable to do basic tasks around the house. She also testified that she obtained a medical marijuana card several weeks prior to the hearing and that marijuana helped her, which is why she had been using it illegally before she received her card.

The IAB issued a written decision. It briefly considered the motion to dismiss made by Claimant and denied it, finding that utilization review was not needed because Employer presented sufficient evidence on the issue of causation. This denial is the sole issue on appeal and will be discussed below.

5

The IAB then considered the merits of the case. It held that Employer met its burden of proving that the narcotic pain medication and injections were not reasonable or necessary. The IAB noted that there was a conflict in the medical testimony and accepted Dr. Brokaw's opinions over those of the nurse practitioner: "I accept Dr. Brokaw's opinion over [NP] Grady's opinions. I find Dr. Brokaw's opinions are more persuasive as they are consistent with the facts of this case and Claimants' condition."[1] The IAB expressed concern that NP Grady either was not aware that Claimant was using marijuana illegally for many years or had been misled by Claimant. The IAB also found that Claimant was not credible because she initially lied about her marijuana use to Dr. Brokaw. The IAB concluded that the use of narcotics had not led to an improvement in Claimant's condition and agreed with Dr. Brokaw's conclusion that Claimant should be weaned off the narcotics.

## III.   THE PARTIES' POSITIONS

On appeal, Claimant argues that her motion to dismiss should have been granted and the matter referred to the utilization review process under 19 *Del. C.* § 2322F(h) ("Section 2322F(h)"). Claimant argues that because Employer was challenging whether Claimant's *treatment* was reasonable and necessary, Employer must submit the treatment in dispute to utilization review pursuant to Section

---

[1] *Zelda Sheppard v. Allen Family Foods*, No. 1373143, at p. 15 (Del. I.A.B. May 11, 2020).

2322F(h). Instead, Employer filed the Petition pursuant to Section 2347, which requires Employer to prove a change in Claimant's status. Claimant points out that Dr. Brokaw's opinion—that Claimant's ongoing condition was not related to the work injury a year after the injury—is contradicted by the fact that Employer had been paying for treatment since 2012 and that the IAB itself found the condition was related to the injury in its prior 2014 decision.[2] Claimant avers that (i) there is no good faith basis for Employer to file the Petition after the 2014 decision and its continuing payments for treatment and (ii) Employer failed to satisfy its burden under Section 2347 to prove that Claimant's condition had changed.

Not surprisingly, Employer disagrees. It argues that Section 2347 allows the IAB to review any previous agreements or awards and, because its expert concluded that causation in this case was in dispute, the utilization review process was not available. Through the testimony of Dr. Brokaw, it maintains that it met its burden of proof: Claimant's ongoing treatment was not reasonable, necessary, and causally related to her injury. It characterizes Claimant's decision to move to dismiss as a procedural tactic that flouts the workers' compensation system's preference to decide cases on the merits. Employer cites factually similar cases where the IAB accepted petitions for review and argues that because the IAB's application of the workers' compensation statute is entitled to deference, its decision should be upheld.

---

[2] *Zelda Sheppard v. Allen Family Foods,* No. 1373143 (Del. I.A.B. June 30, 2014).

7

Employer also points out that had it proceeded to utilization review under Section 2322F(h), Claimant's medications would have been abruptly discontinued, without the weaning period that was recommended by Dr. Brokaw and subsequently ordered by the IAB. Further, Employer notes that the outcome of the utilization review is appealed *de novo* to the IAB under 19 *Del. C.* § 2322F(j); Employer suggests the IAB would have reached the same conclusion as it did on the Petition, but after a long, unnecessary detour through utilization review.

## IV.   <u>STANDARD OF REVIEW</u>

On an appeal from the IAB, this Court does not weigh evidence, determine questions of credibility, or make its own factual findings.[3] The Court must consider the record in the light most favorable to the prevailing party below.[4] Review is limited to an examination of the record for errors of law and a determination of whether substantial evidence exists to support the IAB's findings of fact and conclusions of law.[5] Substantial evidence equates to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[6] The IAB is free to adopt the opinion testimony of one expert over another, and that opinion, if

---

[3] *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66 (Del. 1965).
[4] *Weitzel v. State*, 2016 WL 460309, at *11 (Del. Super. Aug. 9, 2016).
[5] *Olney v. Cooch*, 425 A.2d 610, 614 (Del. 1981).
[6] *Person-Gaines v. Pepco Holdings, Inc.*, 981 A.2d 1159, 1161 (Del. 2009).

8

adopted, will constitute substantial evidence.[7] Errors of law are reviewed *de novo*.[8] Although reviewed *de novo*, heavy weight should be given to the IAB's application of legal principles in the specialized context of our state's workers' compensation scheme.[9] Absent error of law, the standard of review for the IAB's decision is abuse of discretion.[10] Abuse of discretion occurs when the IAB exceeds the bounds of reason in view of the circumstances.[11]

## V.  **DISCUSSION**

When the IAB awards compensation, its decision is considered "an adjudication as to the condition of the injured [worker] at the time it is entered, and conclusive of all matters adjudicable at that time, but it is not an adjudication as to the claimant's future condition and does not preclude subsequent awards or subsequent modifications of the original award."[12] The IAB is not barred from reconsidering awards at a later time for reasonableness or necessity.[13] Nor are

---

[7] *Id.*

[8] *Id.*

[9] *Christiana Care Health Servs. v. Davis*, 127 A.3d 391, 395 (Del. 2015) (observing that "the IAB has the occasion to give life to that scheme on a weekly basis in the many cases that come before it").

[10] *Digiacomo v. Bd. of Pub. Educ.*, 507 A.2d 542, 546 (Del. 1986).

[11] *Bromwell v. Chrysler LLC,* 2010 WL 4513086, at *3 (Del. Super. Oct. 28, 2010).

[12] *Shively v. Allied Sys., Ltd.,* 2010 WL 537734, at *10 (Del. Super. Feb. 9, 2010) (*quoting* A.M. Swarthout, Annotation*, Res Judicata as Regards Decisions or Awards Under Workmen's Compensation Acts,* 122 A.L.R. 550), *aff'd,* 998 A.2d 851 (Del. 2010).

[13] *Id.*

employers barred from raising these reconsiderations. If they were, Section 2347 would be unnecessary.[14]

Utilization review is available to employers and insurance providers to provide for the prompt resolution of issues related to treatment and compliance with the health care payment system or practice guidelines for those claims that have been acknowledged to be compensable.[15]   It may be sought by an employer to evaluate the quality, reasonableness, and necessity of proposed or provided healthcare services for acknowledged compensable claims.[16] But Employer is correct: when causation or relatedness is in question, an employer waives the right to contest causation when it seeks utilization review.[17] Simply put, where causation is at issue, utilization review is not available.[18]

In the present matter, because Employer wanted to argue causation, it challenged Claimant's ongoing treatment *via* the Petition. Employer chose to maintain its causation argument and challenged the treatment through Section 2347, which permits a review at any time. The fact that Employer paid for Claimant's ongoing treatments should not bar the filing of the Petition in light of Dr. Brokaw's expert opinion.

---

[14] *Id.*

[15] 19 *Del. Admin. C.* § 1341-5.1.

[16] 19 *Del. C.* § 2322F(j).

[17] *Poole v. State*, 77 A.3d 310, 312 (Del. Super. 2012).

[18] *Id.*

As for the question of whether medical services are necessary and reasonable, or whether the expenses incurred to treat a condition are causally related to an industrial accident, these are purely factual issues entirely within the purview of the Board.[19] Changes in condition and the lack of continued reasonableness and necessity found by the IAB were based on Claimant's multiple instances and examples of noncompliance with medical direction regarding abusable medications, dishonesty with her medical provider regarding her use of marijuana, and a lack of improvement of Claimant's function and pain level from use of the narcotics.

The Court's role on appeal is not to re-weigh evidence but only to determine whether there was substantial evidence to support the IAB's factual findings and whether its decision was free of legal error. The parties stipulated to Dr. Brokaw's expert qualifications. He opined that causation was at issue to a reasonable degree of professional certainty. The IAB based, in large part, its decision to deny Claimant's motion to dismiss on his testimony. The Court will not disturb the IAB's credibility determination on appeal. The doctor's opinion created a good faith basis for Employer to file Petition. Therefore, this Court concludes that the Board's decision is supported by substantial evidence and is free from legal error.

---

[19] *Id.* at 323 (*quoting Bullock v. K-Mart Corp.*, 1995 WL 339025, at *3 (Del. Super. May 5, 1995)).

11

## VI.   <u>CONCLUSION</u>

For the forgoing reasons, the IAB's decision is AFFIRMED.

IT IS SO ORDERED.