# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

BRIAN SCOTT JOHNSON,      :

    Claimant Below-Appellant,    :  C. A. No. S23A-08-001 CAK

    v.                        :

CANALFRONT BUILDERS, LLC,  :

    Employer Below-Appellee.    :

Submitted:  February 7, 2024

Decided:  February 29, 2024

*On Appeal from Industrial Accident Board*

**AFFIRMED**

**MEMORANDUM OPINION AND ORDER**

Walt F. Schmittinger, Esquire, Schmittinger and Rodriguez, P.A., 414 South State Street, Dover, DE 19903, Attorney for Claimant/Appellant.

Andrew J. Carmine, Esquire, Elzufon Austin & Mondell, 300 Delaware Avenue, Suite 1700, Wilmington, DE 19801, Attorney for Employer/Appellee.

**KARSNITZ, R.J.**

## PROCEDURAL BACKGROUND

On December 5, 2022, Brian Scott Johnson ("Claimant") filed a Petition to Determine Additional Compensation Due (the "Petition"), seeking (1) a compensability determination and payment for total knee replacement surgeries to both Claimant's left and right knees and (2) total disability benefits in connection with the same.[1]

The Petition was heard before the Industrial Accident Board (the "Board") on July 20, 2023. The Board issued a decision on July 28, 2023 awarding the Claimant the following benefits:

1. Outstanding medical expenses for the left and right total knee replacement surgeries;

2. Total disability benefits, at the rate of $713.65, from October 12, 2022 until July 27, 2023;

3. Ongoing partial disability benefits, at the rate of $306.97, effective July 28, 2023;

4. Reimbursement for the medical expert witness fees of Dr. Jose Pando and Dr. Michael Silverman; and,

5. Attorneys' fees and costs in the amount of $13,012.70.[2]

---

[1] Stipulation of Facts (July 20, 2023).
[2] *Brian Scott Johnson v. Canalfront Builders, LLC,* IAB No. 1476304, at 29 (7/28/2023).

Claimant filed a timely partial appeal, limited to the issue of Claimant's entitlement to ongoing total disability benefits instead of ongoing partial disability benefits.

Claimant filed his Opening Brief on October 18, 2023. Employer filed its Answering Brief on November 8, 2023. Claimant filed his Reply Brief on December 1, 2023. I held oral argument on February 7,2024. This is my decision.

## FACTS

Claimant has suffered from and treated for rheumatoid arthritis for at least twenty years. During those years, he experienced pain in many joints, including his shoulders, ankles, feet, and knees. Flare-ups of his rheumatoid arthritis would differ in severity, but would give him difficulty performing tasks at work and at home. To treat pain in his joints, as well as swelling and stiffness, Claimant was placed on biological medications. Despite these symptoms, Claimant was fully functional and performed medium to heavy duty construction work during those years.

Claimant suffered a compensable work accident on July 26, 2018, while working for Canalfront Builders, LLC ("Employer"). While walking down a construction driveway, he fell backwards, hyperextending and tearing the meniscus in his left knee.

Following his work accident, Claimant experienced extreme pain and

swelling in his left knee, making it difficult for him to walk or even stand, let alone work. Claimant underwent an aspiration of and injection to the left knee on August 7, 2018. Unfortunately, this procedure resulted in Claimant developing a dangerous staph infection, which required him to undergo several surgeries on the left knee and to discontinue the biological rheumatoid arthritis medication and begin intravenous and oral antibiotics.

Claimant underwent bilateral total knee replacement surgeries; the right knee in October 2022 and the left knee in January 2023. Following these surgeries, Claimant experienced an improvement in his condition, with much better mobility and much better function. In January, 2023, Claimant's rheumatologist, Dr. Pando, determined that Claimant's symptoms were under control, and he did not require the resumption of the biological medications.

### THE BOARD HEARING

Dr. Pando, who testified for Claimant, had opined as early as June, 2022 that the Claimant was unable to work. Dr. Pando last evaluated Claimant two weeks after the January 2023 left total knee replacement surgery. He also testified that the bilateral knee replacement was causally related to the original work injury.

Dr. Silverman, who also testified for Claimant, opined that returning to work as a practical matter was not really an option. Dr. Silverman did not examine the Claimant after the January 2023 total knee replacement surgery. He also testified

that the bilateral knee replacement was causally related to the original work injury.

Dr. Schwartz, who testified for Employer, evaluated Claimant in January 2019, October 2019, and March 2023 (after the bilateral knee replacement). Although he supported the testimony about the causal connection between the original work injury and the bilateral knee replacement, he testified that there was no medical indication for total disability and, at the very minimum, sedentary work would be appropriate.

At the July 20, 2023 Board hearing, Claimant confirmed that he drove to the hearing in Dover, Delaware from his home in Harbeson, Delaware, for about one hour. He confirmed that he can shop and put gas in his truck. Claimant advised that he had not returned to work since the work accident and had not looked for or applied for any work. When asked if he wanted to return to work, Claimant advised that he was prevented from returning to work by social security disability benefits, as those benefits would cease if he returned to work.

Employer accepted the compensability of the left knee surgery prior to the Board hearing. After the hearing, the Board accepted the medical expert testimony of Dr. Pando and Dr. Silverman regarding the causal relationship of the right total knee replacement surgery to the July 26, 2018 work accident. However, the Board accepted the medical expert testimony of Dr. Schwartz that Claimant was doing quite well after the bilateral knee replacement and that there was no medical indication for

5

total disability. Rather, Claimant could work full-time in a sedentary duty capacity.

The Board cited Claimant's testimony that he had much better function since the surgeries. It noted that Claimant was able to drive himself to the hearing, sit through the hearing, and he did not use an assistive device to walk.

Having found that Claimant could return to work with physical restrictions, the Board addressed whether Claimant was entitled to partial disability benefits under the statute. The Board accepted the vocational expert testimony of Dr. Riley that there was work available to the Claimant in the open labor market within his physical restrictions and vocational qualifications.[3] Dr. Riley identified thirteen potential job opportunities for the Claimant. The Board appropriately scrutinized the survey, eliminating certain jobs as not appropriate for Claimant either from a physical standpoint or from a vocational perspective. Of the remaining positions, the Claimant had an earning capacity of $789.55 per week, entitling him to partial disability benefits at the rate of $306.97 per week.

Applying the controlling law set forth in the Delaware Supreme Court decision *Gilliard- Belfast v. Wendy's,*[4] the Board allowed the Claimant to rely on his treating doctor's opinion regarding work status and awarded total disability benefits paid up to the date of the Board's decision, July 28, 2023, with partial disability

---

[3] Dr. Riley's vocational expert testimony about job availability for Claimant is not being challenged by Claimant on appeal.
[4] 754 A.2d 251 (Del. 2000).

benefits thereafter.

## STANDARD OF REVIEW

The appeal before me is on the record of the proceedings before the Board.[5] My review is limited. I review the decision of the Board solely to determine whether there is substantial competent evidence in the record to support the Board's findings and whether its decision is free from legal error.[6]

I do not determine questions of credibility, or make my own factual findings.[7] I view the facts in the light most favorable to the Board.[8] A ruling of the Board will not be disturbed on appeal unless it is based clearly on unreasonable or capricious grounds.[9] The "Court gives significant weight to the [Board] regarding its application of legal principles in the specialized context of our state's workers' compensation scheme, because the [Board] has the occasion to give life to that scheme on a weekly basis in the many cases that come before it."[10]

## ANALYSIS

The only issue on appeal is whether the Board's decision to terminate

---

[5] 29 *Del. C.* §10142.

[6] *Johnson v. Chrysler Corp.,* 213 A.2d 64, 66 (Del. 1965); *General Motors Corp. v. Freeman,* 164 A.2d 686, 688 (Del. 1960); *General Motors Corp. v. Jarrell,* 493 A.2d 978, 980 (Del. Super 1985).

[7] *Id.*

[8] *Chudnofsky v. Edwards,* 208 A.2d 516, 518 (Del. 1965).

[10] *Berry v. MIRTA QSR KNE LLC*, 2021 WL 626944 (Del. Super. Feb. 16, 2021) citing *Christiana Care Health Services v. Davis,* 127 A.3d 391, 395 (Del. 2015).

Claimant's total disability benefits, and to award only partial disability benefits, is supported by substantial evidence and free of legal error.

Claimant argues that the Board's acceptance of Dr. Schwartz' medical expert opinion that Claimant is physically capable of sedentary duty work is legally flawed. However, "[t]he Board is free to accept or reject in whole or in part testimony offered before it and to fix its verdict upon testimony accepted."[11] The Board is free to accept one expert's opinion over another and may accept or reject an expert's testimony entirely.[12] The Board acted within its legal authority when accepting the expert testimony of Dr. Schwartz over that of Dr. Pando and Dr. Silverman on the issue of Claimant's physical ability to work. Dr. Schwartz was the only expert to examine Claimant after he had fully recovered from both total knee replacement surgeries. Dr. Silverman examined Claimant two days prior to Claimant's January 2023 left total knee replacement and Dr. Pando last examined Claimant only two weeks after the January 2023 left total knee replacement. Therefore, Claimant's experts were unable to testify as to Claimant's current physical ability levels.

Dr. Schwartz' third examination of Claimant occurred nearly two months after Claimant's January 2023 left total knee replacement surgery. He recorded very mild diffuse pain, no effusion, no evidence of instability, and near full range of motion of

---

[11] *Collins v. Giant Food, Inc.,* 1999 WL 1442024, at 3 (Del. Super. Oct. 13, 1999).
[12] *Torres v. Reybold Homes, Inc.,* 1999 WL 144024 (Del. Super. Apr. 24, 2014).

the right knee and mild effusion, moderate pain, near full range of motion, and no instability of the left knee.

Dr. Schwartz' expert opinion as to Claimant's physical ability to work after the two knee replacement surgeries is consistent with Claimant's surgeon, Dr. Choy, who documented that Claimant was doing well after the left total knee replacement.

Dr. Pando recorded that Claimant's mobility was much improved and he did not need to resume biologics because his symptoms were under control largely due to the total knee replacements. Dr. Pando's decision not to resume the biologics, on the basis that Claimant did not require them, suggests that Claimant's overall condition had improved following the knee replacement surgeries as he points to the discontinuance of the biologics as the reason for the worsening of Claimant's rheumatoid arthritis. Dr. Pando's testimony indicates a clear improvement in Claimant's function following the knee replacement surgeries.

Dr. Schwartz' expert opinion that Claimant is capable of sedentary duty work is consistent with Claimant's testimony. When asked about his reporting to Dr. Pando of feeling pretty good and not requiring medication refills, Claimant explained that that was because he was sedentary. Claimant testified that he could carry out activities such as driving, shopping, and fueling his truck. Although his testimony was somewhat contradictory, Claimant ultimately testified that he had not returned to work because if he did, his social security disability benefits would cease.

The Board's acceptance of expert testimony, even when contradicted by other expert testimony, qualifies as substantial evidence for purposes of appeal.[13] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[14] Here, the Board's decision to accept Dr. Schwartz' medical expert opinion as to Claimant's current work capabilities was supported by substantial evidence and within the Board's purview as trier of fact.

The Board's recognition that the left knee work injury was causally connected to the ultimate bilateral total knee replacement, and that the discontinuation of the biologics medication because of the risk of infection led to a worsening of Claimant's longstanding rheumatoid arthritis, does not lead *a fortiori* to a Board conclusion that Claimant was totally, as opposed to partially, disabled. Indeed, after the bilateral total knee replacement, Claimant was doing better, despite the continuing arthritis. This certainly supports a Board finding of partial disability; i.e., that Claimant could work in a sedentary duty capacity.

## CONCLUSION

For the foregoing reasons, Claimant's partial appeal is denied, and the decision of the Board is **AFFIRMED**.

**IT IS SO ORDERED.**

---

[13]*DiSabatino Bros. Inc. v. Wortman,* 453 A.2d 102, 106 (Del. 1988).
[14]*Histed v. E.J DuPont de Nemours & Co.,* 621 A2.d 340, 342 (Del. 1993).

/s/ Craig A. Karsnitz
Craig A. Karsnitz


cc:     Prothonotary